on her port side. Such starboarding by the schooner is admitted, and, on the facts, must be held to have brought about the collision. The steamboat slowed, stopped, and reversed her engine, .after the schooner rounded the stake, and had sternway on at the collision, and she and the Uriah were shoved around by the blow to the starboard, so that, by going ahead, the Uriah, which projected forward beyond the steamboat, was shoved upon the flats.

The libel must be dismissed as to the steamboat, and there must be a decree for the libellants against the schooner, with a reference to a commissioner to ascertain the damages.

=====

## Case No. 5,706.

### The GRATITUDINE.

[Cited in The Shand, Case No. 12,702. See 3 C. Rob. Adm. 240.]

=====

## Case No. 5,707.

### GRATTAN v. APPLETON et al.

[3 Story, 755; 8 Law Rep. 116.] [1]

Circuit Court, D. Massachusetts. May Term, 1845.

LETTERS TESTAMENTARY—DONATIO CAUSA MORTIS —DOMICIL—PERSONAL PROPERTY—COSTS.

1. Where A, being domiciled in New Brunswick, wrote certain letters to B, desiring him, on the death of A, to make a certain distribution of the property belonging to A in the hands of B; and after A's decease (who died insolvent), C, his administrator, brought the present suit to recover the money of B,—it was *held*, that the letters were testamentary in their character, but that, as they were not in conformity with the law of A's domicil, by which they were to be governed, they did not constitute a valid will; and that, had they been valid as a will, the legatees could have obtained no benefit therefrom, on account of the insolvency of A.

[Cited in Lee v. Luther, Case No. 8,196; McKinnon v. McKinnon, 46 Fed. 722.]

[Cited in Manuel v. Manuel, 13 Ohio St. 463.]

2. To constitute a donatio causa mortis, there must have been a transfer of property in expectation of death from an existing illness, the donation depending on the condition of death from such illness. But any instrument may constitute a will, which appears to be intended to operate after the death of the party making it, and not before.

[Quoted in Smith v. Dorsey, 38 Ind. 457. Cited in Cutting v. Gilman, 41 N. H. 152; Craig v. Kittredge, 46 N. H. 58.]

3. The law of the place of the testator's domicil governs in relation to a will of personal property, although the will be made in another state or country, where a different law prevails.

4. In the present case, as the defendant was acting bona fide. and was in no default, he was not bound to pay interest on the assets in his hands, unless he had made interest thereon, and he was entitled to costs. As the questions in this case were new and important, and were

[1] [Reported by William W. Story, Esq. 8 Law Rep. 116, contains only a partial report.]

proper for discussion, each party should bear his own costs, except the principal defendant.

Bill in equity. The bill in substance stated, that Sir John Caldwell died at the city of Boston, on or about the eighth day of October, A. D. 1842, and that the plaintiff [Thomas C. Grattan], on the twenty-second day of April, A. D. 1844, was duly appointed administrator of the estate of the said Sir John, within the commonwealth aforesaid, and has given bonds according to law for the faithful performance of his duties as such. That the said Sir John Caldwell died insolvent; that on or about the twenty-first day of April, A. D. 1841, the said Sir John Caldwell assigned to the said William Appleton twenty shares in the Nashua Manufacturing Company, and at the same time received from the said Appleton seven thousand dollars, as an advance on account of the said shares. That on or about the same time, the said Sir John addressed to the said Appleton a letter of instructions with regard to the said shares, which was duly received by the said Appleton, in the following words: "Boston, 21st April, 1841. Mr. William Appleton,—Dear Sir: I am desirous of getting an advance on twenty shares in the Nashua Manufacturing Company, of seven thousand dollars. Will you receive the shares, make the advance,—sell the shares at such time as you deem expedient—my wish would be to have them held with a hope of getting six hundred dollars per share for them; but you will please dispose of them within one year, at the market price—so many as will reimburse your advance, should I not before repay your advance. Yours truly, John Caldwell. Boston, April 21, 1841. Received of William Appleton seven thousand dollars as advance on twenty shares in the Nashua Company, transferred to him. John Caldwell." That on or about the fourteenth day of January, A. D. 1842, the said Sir John Caldwell addressed to the said Appleton a letter, which was duly received by the said Appleton, in the following words: "Boston, 14th January, 1842. William Appleton, Esq., Boston. My Dear Sir: I beg to trespass on your friendship, by requesting, that in the event of my death occurring before I have the pleasure of seeing you again, that you will be so kind as to remit the proceeds of treasury bill for five hundred dollars, now in your hands, in a bill of exchange, and remit the same to E. H. Chapman, Esq., Leaden-Hall street, London. for the use of Miss Johnson, who is well known to him. I remain, dear sir, your very truly obliged friend and servant, John Caldwell." That the said letter enclosed the two following letters: "Boston, 25th April, 1841. William Appleton, Esq., Boston. My Dear Sir: May I request the favor of your keeping the inclosed until you hear of my death, and then open it, as it conveys my wishes with respect to the disposition of what balance of mine may be in your hands. Before that event takes place.